# WHEELING.

ARMSTRONG v. WILSON et al.

Submitted June 8, 1880.   Decided December 10, 1881.

*(PATTON, JUDGE, Absent.)

1. Where in a chancery suit a party has relied in his answer to the bill upon a defence, which, if it could avail him at all, may be pleaded in the answer, a cross-bill setting up the same matter is unnecessary.

2. It is not error to dissolve an injunction on a cross-bill restraining the carrying out of a decree in the cause and to dismiss said bill, where the matters of defence in the cross-bill have been set up in an answer, and the cross-bill is unreasonably delayed, and especially where the plaintiff in the cross-bill fails to state any reason for such delay.

3. After the close of the term, at which a consent-decree was entered, it can never be set aside, except by consent, by any proceedings in the cause, though it was entered by mistake or by the fraud of one of the parties.

4. An original bill is proper and necessary to annul such consent-decree, whether the decree be final or interlocutory.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Taylor, rendered on the 12th day of March, 1878, in a cause in said court then pending, wherein A. Armstrong was plaintiff, and Jacob M. Wilson and others were defendants, allowed upon the petition of said Wilson.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

In August, 1875, the plaintiff filed his bill in the circuit court of Taylor county against Jacob M. Wilson and a number of other parties, creditors of said Wilson, the object of which bill was to enforce certain judgment-liens of his own set out in his bill.   In the bill he sets out all the judgments against said Wilson and fixes their priorities according to the respective dates of such judgments, copies of which he files with his bill.   He also sets out the different tracts of land owned by said Wilson and makes the proper parties defend-

─────────
*Cause submitted before Judge P. took his seat on the bench.

ants to the bill and prays, that the judgment-liens may be enforced against the real estate of said Wilson, according to the priorities fixed in the bill, which appear according to the copies of the judgments.

On the 6th day of September, 1875, the cause was heard upon the answers of the defendants, who had appeared, and on the bill taken for confessed as to the other defendants, and on the exhibits; and the court decreed, that the lands should be sold to pay the liens of the said judgments, the amounts and priorities of which were ascertained by the decree. At the conclusion of the decree it is provided: "But no sale shall be made by authority of this decree before the 1st day of April, 1876; and the foregoing decree is rendered by consent of defendant, Jacob M. Wilson, now here given in open court." On the 10th day of March, 1876, the defendant, Jacob M. Wilson filed his separate answer to the bill, to which the complainant replied generally.

In his answer he says: "It is true as stated in said bill, that the several creditors named in said bill have liens upon the land therein set forth and described.' * * * 'And respondent further admits, that the plaintiff did recover against respondent the several judgments stated by him; but respondent denies, that plaintiff is entitled to enforce the full amount of said judgments for the reason hereinafter stated." He then proceeds to state how this indebtedness to the plaintiff originated, and further says: "Shortly before the 30th day of January, 1872, plaintiff and respondent talked about having a settlement of the accounts or demands of plaintiff against respondent, and on that day respondent went to the office of plaintiff in Pruntytown, and it was agreed, that plaintiff should cast up the interest on said single bill for $1,380.20 from its date, October 30, 1862, and on the other obligations and notes of respondent to plaintiff. * * Respondent not being able to cast up the interest had to entrust the same to plaintiff, who directed one Isaac Morris to make the calculations, and respondent supposed it would be done correctly and in accordance with law. * * That without respondent's consent and knowledge plaintiff directed said Morris to compound the interest upon said single bill for $1,380.20, upon the single bill for $39.15, and upon the single bill for $200.00, and the

promissory note for $200.00; that by the plaintiff's calculation the interest upon the single bill of $1,380.20 amounted to $1,004.69, whereas it should have been $770.00, or near that amount, and the excess upon the other notes and bonds amounted to about $8.00, making an aggregate error and overcharge of about $243.00. Respondent supposing the calculation to be correct, he and his co-defendants and sons, Nathan and Leonzo, executed to plaintiff said single bill for $1,593.97. Respondent herewith files as part hereof a copy or duplicate of the statement made by said Isaac Morris on said 30th day of January, 1872, marked "X. L.," which respondent obtained from the plaintiff.

Respondent further says, that he did not ascertain the fact that plaintiff compounded the interest in the manner aforesaid upon said single bills and notes, until after judgment at law had been obtained thereon by plaintiff; and respondent avers, that plaintiff obtained his advantage over respondent by mistake upon respondent's part, and through fraud upon the part of the plaintiff in manner aforesaid; and respondent avers, that plaintiff has obtained judgments at law and decrees in this cause against respondent for a much larger sum than plaintiff is entitled to by reason of his overreaching respondent through said erroneous and fraudulent calculation of interest, which respondent reports was without his knowledge or consent. Respondent further says, that the decree in this cause against him in favor of the plaintiff rendered at the September term, 1875, was not by consent of respondent, although said decree so declares and recites. On the contrary respondent says, that at the September term, 1875, he employed counsel to defend his interests in said cause, and plaintiff having learned the fact, came to respondent and stated to him, that he, respondent, had better save expense by not retaining counsel, and that he, plaintiff, was going to have a decree for sale of respondent's land rendered at said term in this cause, and respondent thereupon remarked, that he, plaintiff, must be as merciful as possible, and no further conversation took place between plaintiff and respondent in reference to the matter; and respondent avers and charges, that the allegation and recital in said decree, that " the foregoing decree is rendered by consent of the defendant, Jacob M. Wilson, now

here given in open court, is false and was fraudulently inserted in said decree by plaintiff, who was the draughtsman thereof, and was and is the clerk of this Honorable Court; and respondent can only say, that if plaintiff should give as a reason for his inserting said recital in said decree, that he, plaintiff, understood respondent to agree thereto in the conversation had between plaintiff and respondent, plaintiff is entirely mistaken as to respondent having given any such consent."

He says: "He is entirely willing to pay plaintiff whatever he may justly owe plaintiff, and that he only denies, that the amount exacted by plaintiff from respondent in the way of illegal and usurious interest shall be deducted from plaintiff's judgments, and respondent is willing, that the decree as rendered may stand for the residue of said judgments recited in plaintiff's bill." He prays that the said amount of his indebtedness to the plaintiff may be reduced by deducting the said excess of interest, &c.

After waiting for nearly eighteen months and taking no proof whatever to sustain his answer he filed a cross-bill, in which he sets up the same matters set up in his answer with some variations. In the cross-bill he says: "Armstrong, who is an expert accountant proceeded to make, what he pretended, and what plaintiff then and until very recently believed, to be a correct statement, &c." "The plaintiff was astonished at the amount but believing Armstrong to be honest and truthful, and being himself but little skilled in making such calculations, and being wholly unable to follow and fully comprehend the manner in which said statement was made, he accepted his calculation as correct, &c." He then proceeds to state the excess of interest charged and says: "that since the rendition of the decree hereinafter referred to he has learned for the first time, that the said calculation made by the said Armstrong was grossly inaccurate and usurious, &c. In this cross-bill he makes an additional charge not in the answer, that the judgment recovered against him by Andrew Miller was for an usurious debt. He says: "All of said judgments were by default, as the plaintiff then believing the demand to be correct and just made no defence thereto, nor did he even employ counsel to protect his interests therein." He then

states, that his property is valuable; that he is unable to pay; that he had sustained heavy losses, &c. He further says in this cross-bill, that "when the decree was prepared and shown to him by Armstrong, he observed that he was not given any day of payment, but the commissioners were authorized to sell all his lands, as soon as they could give the notice prescribed by the decree. This alarmed the plaintiff and he objected to the entering of said decree but; the said Armstrong, to allay his fears, assured him, that the same should be so modified, that no sale should take place until the 1st day of April, 1876. To the decree so modified the plaintiff consented, never supposing or intending, that his act could by any means be construed as consenting to the frauds perpetrated upon him by said Armstrong and Miller, and least of all as assenting to the payment of said usurious interest, or as waiving his right to resist the same when discovered." He insists as the decree is interlocutory he is not concluded thereby nor barred thereby of his right to be relieved from the payment of the said usurious interest. He objects to the sale of his lands on the terms prescribed in the decree.

The prayer of the cross-bill is, that the amount of the usurious interest may be ascertained and abated from the amounts decreed to be paid to Armstrong & Miller; that said decree may be set aside and so modified as to direct a sale, when made, to be made upon a credit of one, two, and three years with interest, and that the lands be divided and sold in small pieces, and prayed for an injunction of the sale.

On the 23d of August, 1877, the judge of the circuit court of Taylor county granted an injunction, as prayed for in the bill. On the 12th day of March, 1878, the cause came on to be heard upon the original and cross-bill, &c.; and the defendants to the cross-bill demurred thereto, for want of equity and moved a dissolution of the injunction and the dismissal of the cross-bill, and the court thereupon dissolved the injunction and dismissed the cross-bill upon the demurrer. From this decree the said Wilson appealed.

*Edwin Maxwell* for appellant.

*Martin & Woods* for appellee.

1st. The cross-bill was open to demurrer because it does

not offer to pay the sum admitted to be due.    Story Eq. Pl. § 630.

2d. And also, because it seeks to bring into question facts which the appellant Wilson has admitted in his answer to original bill.    *Id.* § 632.

3d. And also because the defence of usury might have been made at law, and no reason whatever is shown why that defence was not made at law.    9 Gratt. 43 and 255 ; Tates Digest 553, note ; 26 Gratt. 69 ; *Id.* page 516, note ; 4 Rand. 537.

4th. Also because all the matter set up in the cross-bill was known to appellant when the judgment at law was rendered and when appellant's answer was filed, and that matter is set up in that answer.    Besides, having elected under chapter 125 § 35 of Code to set up the same affirmative matter in his answer, the appellant cannot be allowed to do the same thing in a cross-bill.

5th. It is irregular and too late to file cross-bill after answering original bill, without accounting for the delay, which is not attempted.    Lube's Equity 104 note and 105 ; *White* v. *Buloid,* 2 Paige 164; 2 Ves. 336.

6th. In order to avail himself of the 7th section of chapter 90 of Code, a party must aver in his bill, that he is unable to prove the facts sought from defendant by other testimony. Tates Digest p. 516 note ; 10 Peters 497.

7th. If compound interest has accrued and if a note be given for its payment, the note has a sufficient legal consideration to sustain it.    2 Pars. on Cont. 430.    Courts will enforce payment of compound interest after it has accrued.    *Id.* 431 ; it is not usurious.    Chitty on Cont. 648 note.

8th. Because the final decree was consented to by appellant in open court, and he cannot gainsay its correctness or contradict it.    *A decree by consent cannot be reheard.*    Adams Eq. 400.

JOHNSON, PRESIDENT, announced the opinion of the Court:

The only error here assigned is, that the court erred in dissolving the injunction and dismissing the cross-bill without first correcting the said former decree, and in some form giving petitioner credit for the usurious and unlawful interest charged.

In *Baker* v. *Oil Tract Company,* 7 W. Va. 454, it was held, that in a suit or proceeding by foreign attachment in equity to collect the price of two oil-tanks, it is competent for the defendant to plead and rely upon a breach of warranty or to the quality of the material of the oil-tanks in reduction or abatement of the price; and when such defence is pleaded and relied on in the answer, it is unnecessary to file a cross-bill for that purpose. Also that it is not error in the circuit court to refuse to allow a defendant to file a cross-bill praying a suspension of further proceedings in the original suit, until an account prayed in the cross-bill can be taken, when the filing of the cross-bill has been unreasonably delayed, and especially where the complaint in the cross-bill fails to state any reason for such delay. Those principles apply to this cause; and it was not error to dismiss the cross-bill, because the same defence set up there was made in the answer, and also because the filing thereof was unreasonably delayed without any reason given for such delay.

But there was another trouble, as to setting up of the defence either in the answer or in the cross-bill. The decree pronounced, before either the answer or the cross-bill was filed, is a consent-decree. This Court has held, that after the close of the term, at which a consent-decree was entered, it can never be set aside, except by consent, by any proceedings in the cause, though it had been entered by mistake or by the fraud of one of the parties. *Manion* v. *Fahy,* 11 W. Va. 482; *Rose & Co.* v. *Brown et ux.,* 17 W. Va. 649. A consent-decree may be annulled on an original bill filed for the purpose, when it was procured by fraud or was entered by mistake of one or both of the parties differently from what it should have been entered. An original bill is necessary and proper to annul such consent decree whether the decree be final or interlocutory. *Manion* v. *Fahy, supra.* It is not pretended, that the cross-bill filed in this cause could be considered an original bill for the purpose of setting aside the consent-decree theretofore entered in the cause. But before filing such original bill for the purpose of setting aside such consent-decree it would be well for the party to enquire, whether the defence pleaded in the answer and cross-bill, to wit, the usury and the fraud, could avail him, he having taken no steps whatever to defend himself at law. The

question does not arise in this cause, but the following authorities are upon the subject: *Brown* v. *Swann,* 10 Pet. 497; *Shields* v. *McClung,* 6 W. Va. 79 ; *Knapp* v. *Snyder,* 15 W. Va. 434; *Alford* v. *Moore's adm'r, Id.* 597.

The decree of the circuit court of Taylor county rendered in this cause on the 12th day of March, 1878, is affirmed with coss and $30.00 damages.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE AFFIRMED.